UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ROY SHANE TRIMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-19-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Roy Trimble, brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of an administrative decision of the Commissioner of Social Security

(Commissioner) denying Trimble's application for a period of disability and disability insurance

benefits (DIB).  The Court, having reviewed the record and for the reasons set forth herein, will

DENY Roy Trimble's Motion for Summary Judgment [R. 9] and will GRANT the

Commissioner's Motion for Summary Judgment. [R. 10.]

**I**

Roy Trimble filed an application for DIB on December 27, 2010.  [Transcript (Tr.) 173-

80.]  He alleges a disability beginning on May 1, 2008, which was later amended to November

20, 2010, due to a variety of problems including migraine headaches, bipolar disorder, problems

sleeping, depression, hypertension, anxiety, and obesity.  [Tr. 209.]  Trimble's application was

denied initially on November 19, 2010 [Tr. 71-83] and again upon reconsideration on August 26,

2011 [Tr. 101-16.]  An administrative hearing was conducted before Administrative Law Judge

Jonathan Stanley (ALJ) on August 22, 2012. [Tr. 28-67.]  During the hearing, the ALJ heard

testimony from Trimble and vocational expert (VE) Laura Whitten. [Tr. 59-65.]  Trimble, who

was thirty-eight years old as of the alleged onset date, has a high-school education via general

education diploma (GED).  [Tr. 34.]  Trimble's past relevant work includes working as a truck

driver, construction worker, factory worker, machine operator, trash collector, forklift operator,

security guard, and he has served in the National Guard. [Tr. 36-49, 217.]  Although the VE

testified that Trimble could no longer perform his past relevant work, she found that there are

jobs that exist in significant numbers in the national economy that Trimble could perform, and

the ALJ accepted that testimony. [Tr. 60-64, 21.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis.  *See* 20 C.F.R.

§ 404.1520.[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled.

20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of

impairments which significantly limit his physical or mental ability to do basic work activities,

then he does not have a severe impairment and is not "disabled" as defined by the regulations.

20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  20 C.F.R. §

404.1520(d).  Before moving to the fourth step, the ALJ must use all the relevant evidence in the

record to determine the claimant's residual functional capacity (RFC), which assesses an

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step
> inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of
> proving the existence and severity of limitations caused by her impairments and the fact that she is
> precluded from performing her past relevant work, but at step five of the inquiry, which is the
> focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in
> the economy that accommodate the claimant's residual functional capacity (determined at step
> four) and vocational profile.

*Id.* at 474 (internal citations omitted).

individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Trimble has not engaged in substantial gainful activity since November 20, 2010, the alleged onset date.[2] [Tr. 13.] At Step 2, the ALJ found that Trimble suffers from the following severe impairments: obesity; bipolar disorder, mixed without psychotic features; anxiety disorder. [Tr. 13.] At Step 3, the ALJ found that Trimble's impairments, whether considered alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 15-16.] Before moving to Step 4, the ALJ considered the entire record and determined that Trimble possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except for certain non-exertional physical limitations and certain mental limitations which were described as follows:

> The claimant can understand, remember, and carry out short, simple instructions and make simple work related judgments; can maintain adequate attention and concentration to perform simple tasks; can perform simple routine repetitive work; can manage and tolerate occasional changes in the work place setting; and the claimant can interact occasionally with supervisors, co-workers, and the general public.

---

[2] As noted above, this is an amended alleged onset date. [Tr. 11.]

[Tr. 16-17.] After explaining in significant detail how he determined Trimble's RFC, at Step 4 the ALJ found that based on this RFC, Trimble is unable to perform any past relevant work. [Tr. 16-21.] At Step 5, the burden shifted to the Commissioner to identify a significant number of jobs in the national economy that Trimble could perform, given his RFC, age, education, and experience. *Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1560(c). Here, the ALJ concluded that, based on Trimble's RFC and the VE's testimony, there are jobs that exist in significant numbers within the national economy that Trimble could perform. [Tr. 21-22.] Accordingly, on September 25, 2012, the ALJ issued an unfavorable decision, finding that Trimble was not disabled, and therefore ineligible for DIB. [Tr. 23.] The Appeals Council declined to review the ALJ's decision on November 27, 2013 [Tr. at 1-5] and Trimble now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a

whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not

conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.

*Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also*

*Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the

Commissioner's decision is supported by substantial evidence, it must be affirmed even if the

reviewing court would decide the matter differently, and even if substantial evidence also

supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## A

Trimble's motion for summary judgment primarily contends that the ALJ did not give

appropriate weight to the opinion of Trimble's treating psychiatrist and did not include adequate

reasoning for discounting the treating psychiatrist's opinions.[3] [R. 9-1 at 1-2.] Under 20 C.F.R.

§ 404.1527(d)(2), a treating source's opinion on the issues of the nature and severity of a

claimant's impairments is given controlling weight only if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other

substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th

Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Bogle v. Sullivan*, 998 F.2d 342, 347-

48 (6th Cir. 1993) ("This court has consistently stated that the Secretary is not bound by the

treating physician's opinions, and that such opinions receive great weight only if they are

---

[3] The Court notes that while Trimble initially presented his argument concerning the treating psychiatrist as two separate issues, they both relate to the same contention and will be considered together. The other issues Trimble lists at the beginning of his brief will be addressed later in this opinion.

supported by sufficient clinical findings and are consistent with the evidence.").  As part of this

so-called "treating physician rule," an ALJ is required to give "good reasons" for not giving

controlling weight to opinions from the treating physician in a disability determination.  20

C.F.R. § 404.1527(d)(2).  The ALJ must also explain what weight, if any, the treating

physician's opinion warrants.  *See* 20 C.F.R. § 404.1527(c)(2).  In doing so, the ALJ should

consider the following factors: "the length of the treatment relationship and the frequency of

examination, the nature and extent of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and specialization of the treating source."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 544); 20 C.F.R.

§ 404.1527(d).  In considering these factors, however, the regulations do not require "an

exhaustive factor-by-factor analysis."  *Francis v. Comm'r of Soc. Sec. Admin*., 414 F.App'x 802,

804 (6th Cir. 2011) (finding no error even though the ALJ did not specifically consider two of

the factors because the ALJ noted the inconsistency of the treating physician's opinion with

objective medical evidence, plaintiff's activities, and assessments of other physicians).

In the case at hand, Trimble had previously filed for disability insurance benefits, and a

previous ALJ denied that claim.  Therefore, because the decision which Trimble challenges in

the instant case occurred subsequently to a previous denial of his claim, ALJ Stanley properly

noted that he was required to apply the principles explained by the Sixth Circuit in *Drummond v.*

*Comm'r of Soc. Sec*., 126 F.3d 837, 840-43 (6th Cir. 1997).  [*See* Tr. 17.]  The *Drummond* case

requires that when an ALJ makes a final determination on an aspect of a disability claim,

subsequent ALJ's are bound by the prior ALJ's determination unless there is a showing of new

material evidence or changed circumstances.  *Drummond*, 126 F.3d 842 ("Absent evidence of an

improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous

ALJ."). To show such changed circumstances, "a comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review is necessary." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007) (citing *Drummond*, 126 F.3d at 842). Thus, a prior ALJ's finding concerning a claimant's residual functional capacity has a preclusive effect on future administrative proceedings if no new substantial evidence is presented showing that the claimant's condition has significantly improved. *See, e.g, Blevins v. Astrue*, 2012 WL 3149343, *3 (E.D. Ky. July 31, 2012) (quoting *Drummond*, 126 F.3d at 843).

In light of this standard, ALJ Stanley specifically noted that "the evidence presented does not support a material change in [Trimble's] condition," and that he therefore was bound by the findings in the previous decision and did not find a basis for reopening that prior decision. [Tr. 17.] Despite this procedural posture, ALJ Stanley went on to explain his reasons for this conclusion, including his analysis of the prior ALJ's opinion concerning Trimble's treating psychiatrist, Dr. Welch. Contrary to Trimble's assertion that the treating psychiatrist "has been completely ignored" by the ALJ, both the prior ALJ's written decision and ALJ Stanley's decision specifically reference and analyze Dr. Welch's opinion. Additionally, ALJ Stanley gave good reasons for not giving Dr. Welch's opinion controlling weight. In particular, ALJ Stanley noted that the prior ALJ "gave little weight" to Dr. Welch's opinion because it was inconsistent with substantial evidence in the record, and that no new evidence had been presented to contradict that finding. [Tr. 20.]

As an initial point of clarification, because much of the evidence in the record relates to Trimble's first application for DIB that was denied in 2010, ALJ Stanley was particularly required to note any new evidence since that previous denial and any new symptoms. The only indication of Dr. Welch's opinion from that time period in the record is a questionnaire that Dr.

Welch filled out about the effects of Trimble's mental impairments in January 2011.[4]  [Tr. 315-

18.]  In it, he described his overall prognosis as "Fair with continued care," and opined that

Trimble's mental problems would cause him to miss work more than three times a month.  [Tr.

316.]  Dr. Welch rated Trimble's various mental abilities required for various levels of work and

particular kinds of jobs on a scale from "unlimited or very good" to "poor or none."  Out of

twenty-five abilities and aptitudes, Dr. Welch rated Trimble's abilities as "poor" on ten, and

rated the other fifteen as "good" or "fair."  [Tr. 317-18.]  On a chart describing four functional

limitations, Dr. Welch rated Trimble's degree of limitation as "slight" concerning restriction of

daily living activities, and "marked" concerning difficulties in maintaining social functions.  [Tr.

318.]  Dr. Welch described Trimble's concentration difficulties and failure to complete tasks in a

timely manner as "often," and he checked the box for "continual" when asked about Trimble's

episodes of deterioration or decompensation in a work setting.  [Tr. 318.]  The rest of the report

consisted mainly of answering simple questions in a yes or no format.  In answer to the question

about describing any other limitations that would affect Trimble's ability to work at a regular

job, Dr. Welch answered "N/A."  [Tr. 318.]  When asked if Trimble could manage benefits in his

own interest, Dr. Welch answered "Yes."  [Tr. 318.]  The record does not contain any detailed

findings, explanation, or other testimony from Dr. Welch.

The Court notes at the outset that Trimble does not explain how any of this report was

ignored or not given proper weight other than to assert that the ALJ failed to give it appropriate

deference, that the "exertional and non-exertional limitations" placed on Trimble should have

---

[4]  Because Trimble never specifies what aspect of Dr. Welch's opinion was improperly "ignored" by the ALJ, the Court assumes Trimble is referring to a questionnaire that Dr. Welch filled out in January 2011 because that is the only document in the record that the Court can find where Dr. Welch sets forth anything close to an actual opinion regarding Trimble's mental limitations. Trimble's first application was denied on June 1, 2011, after Dr. Welch's report.  The record does not contain any more recent reports from Dr. Welch.

been taken into consideration, and to assert that the ALJ did not consider the factors required by § 404.1527(c)(2).[5]  [R. 9-1 at 4-5.]  First, as explained above, the ALJ did not ignore this report. The ALJ specifically acknowledged that Trimble had "an established treating relationship with Sam Welch, M.D.," and he described the treatment Trimble received from Dr. Welch by noting the length and duration of the treatment relationship, how often he saw Dr. Welch, the medications prescribed, and the nature of the treatment.  [Tr. 18-19.]  These are all factors the ALJ is required to consider.  *See Cole*, 661 F.3d at 937 (quoting *Wilson*, 378 F.3d at 544).  There is no evidence whatsoever that the ALJ ignored Dr. Welch's opinion.  Indeed, many of the ALJ's findings do not actually contradict Dr. Welch's answers on the questionnaire, and the prior ALJ's determination concerning Trimble's RFC.

Second, as noted above, the ALJ explained that both he and the prior ALJ gave Dr. Welch's opinion less weight because it was inconsistent with substantial evidence in the record. ALJ Stanley specifically cites to the portions of the record that demonstrate inconsistencies with Dr. Welch's opinion.  For example, while Dr. Welch rated Trimble's ability to perform several functions listed on the questionnaire as poor to no ability, and suggests from his ratings that Trimble's limitations are severe, including episodes of deterioration or decompensation, the ALJ noted that the evidence presented shows that Trimble has never experienced mental breakdowns requiring hospitalization, nor has he engaged in physical violence during the relevant period. [Tr. 20.]  Although Dr. Welch indicated that Trimble is incapable of interacting with people, the ALJ noted that substantial evidence in the record, including Trimble's own testimony, indicates

---

[5] In support of his contention that proper deference was not given to Dr. Welch, Trimble cites to *Bowen v. Commissioner of Social Security*, 478 F.3d 742 (6th Cir. 2007).  That case is easily distinguished, however, because the ALJ in *Bowen* completely failed to even mention the treating psychologist anywhere at all within a 12-page opinion, which "plainly violated the terms of 1527(d)(2)."  *Id*. at 747.  In contrast, ALJ Stanley discussed Dr. Welch's opinion and also addressed each one of the factors the *Bowen* court listed as required under §404.1527(d).

that he lives with and gets along with his wife and children, visits his parents on a weekly basis,

had been shopping within three weeks of his hearing, and that Dr. Atcher described Trimble as

"friendly and cooperative" during a consultative examination.  [Tr. 20.]  These facts constitute

substantial evidence contradicting some of Dr. Welch's conclusions, and indicating that

Trimble's social limitations are less severe than Dr. Welch believed.  If anything, the

contradictory evidence the ALJ noted shows a possible improvement in Trimble's condition

since Dr. Welch made his initial observations in January 2011.  The fact that the record contains

substantial evidence contradicting Dr. Welch's answers on the questionnaire supports the prior

ALJ's decision to give Dr. Welch's opinion less weight, and supports ALJ Stanley's

understanding that he is bound by the prior ALJ's findings concerning Trimble's limitations.  *See*

*Drummond*, 126 F.3d at 842-43.

Third, the ALJ properly described the weight afforded to Dr. Welch's report by

contrasting it with countervailing opinion evidence and explaining why ALJ Stanley chose not to

disturb the prior ALJ's decision to give more weight to the opinions of Dr. Atcher, Dr.

Vandivier, and Dr. Brown.  For instance, the ALJ noted that Dr. Atcher's report was much more

detailed than Dr. Welch's, and it was supported by the medical evidence.  [Tr. 19-20.]  Doctor

Atcher performed a consultative examination in May 2011, which was more recent than Dr.

Welch's report, and Dr. Atcher's report acknowledged several symptoms of mental disorders that

Trimble suffered from but also noted that despite those symptoms Trimble's thoughts were

logical and goal oriented, he had good hygiene, and was friendly and cooperative.  [Tr. 18.]

After extensive and thorough analysis, Dr. Atcher concluded that Trimble suffered from some

mental limitations but that he could perform some simple tasks and occasionally interact with

others.  [*Id.*]  ALJ Stanley further explained that he agreed with the prior ALJ's decision to give

Dr. Atcher's opinion "some weight" because it was confirmed by facts in the record and by Trimble's own testimony that he could perform activities such as driving, occasional grocery shopping, playing pool, and playing poker. [Tr. 20.]  ALJ Stanley explained that he found the prior ALJ's conclusions concerning Trimble's residual functional capacity were supported by Dr. Brown's opinion, and that no new medical evidence altered those findings.  ALJ Stanley also explained how Dr. Vandivier's opinion supported the previous finding on Trimble's RFC, and noted that the prior finding was consistent with Trimble's own testimony and his ability to engage in certain activities, albeit with some limitations. [Tr. 19-20.]

Furthermore, whenever statements about the intensity, persistence, or limiting effects of a claimant's symptoms are not substantiated by medical evidence, the ALJ must make a finding on the credibility of the statements based on the entire record. *Ulman*, 693 F.3d at 711.  To the extent that Dr. Welch's report was not substantiated by the evidence in the record, as both ALJ Stanley and the prior ALJ found, ALJ Stanley considered the countervailing opinion evidence, Trimble's own testimony, and the other evidence in the record in determining to give less weight to Dr. Welch's report.  ALJ Stanley explained this decision in detail, and his conclusions are supported by substantial evidence.

Fourth, despite Trimble's protestations to the contrary, it is worth noting that the prior ALJ's determination of his RFC did account for Trimble's social limitations by reducing his exposure to various stressors in the work place and reduced interaction with supervisors, co-workers, and the general public. [Tr. 20.]  Similarly, both the previous ALJ and ALJ Stanley found that Trimble could perform a reduced range of light work. [Tr. 21.]  This finding, along with the determination of Trimble's RFC, is consistent with the evidence in the record as a

whole, takes into account Trimble's limitations, and does not ignore the opinions of his treating professionals.

Moreover, ALJ Stanley also noted that Trimble had received treatment from other professionals besides Dr. Welch since the prior denial of his disability claim, and addressed the opinions of those treating therapists in some detail.  [Tr. 18-19.]  For example, ALJ Stanley described the nature of the treatment relationship between Trimble and two therapists at Pathways, Inc. medical facility, Anita Lakes and Camille Markward.  [Tr. 19.]  Both of their opinions were formed more recently than that of Dr. Welch's as indicated on the questionnaire, and the therapy they provided to Trimble occurred much closer in time to ALJ Stanley's decision and specifically addressed Trimble's social limitations.[6]  ALJ Stanley took this into account, but also discussed their opinions within the context of the medications that Dr. Welch has continued to prescribe for Trimble – a point which ALJ Stanley noted suggests that Trimble's condition is somewhat stabilized through treatment.  [*See* Tr. 19.]  While ALJ Stanley acknowledged that Ms. Lakes confirmed Trimble struggled with anger management issues, he particularly noted the contradictions between Trimble's own allegations concerning his limitations and Ms. Markward's assessment of his abilities.  [Tr. 19.]  Additionally, Ms. Markwood substantiated Trimble's testimony about his social activities.  In particular, ALJ Stanley noted that "most recently in July 2012" Ms. Markward reported that Trimble enjoyed participating in activities such as throwing darts and shooting guns, which supported the ALJ's finding that Trimble was able to engage in several activities despite some mild restrictions.  [Tr. 15.]  While the Pathways therapists' specialties and treatment relationship with Trimble was admittedly different from that

---

[6] Ms. Lakes provided therapy to Trimble in April 2012, and Ms. Markward provided therapy in July 2012.  Dr. Welch's report was signed on January 26, 2011.  The hearing before ALJ Stanley occurred on August 22, 2012.

of Dr. Welch, the ALJ took all their opinions into account in his assessment and did not ignore

any of them, while also considering the time frame in which the opinions were formed.

Finally, Trimble accuses the ALJ of ignoring his own testimony.  There is nothing in the

record indicating that the ALJ ignored any of Trimble's testimony at the hearing.  On the

contrary, as already alluded to, the ALJ referred to Trimble's testimony several times, and even

specifically relied on his testimony concerning the activities which he can perform and enjoys

performing.  [*See, e.g.*, Tr. 16, 19-20, 21.]  The ALJ made a credibility determination about

Trimble's allegations concerning his limitations -- allegations which he did not find to be

credible because the medical evidence and opinions did not support them.  He also found that

Trimble's claims about his limitations were undermined by his own testimony, and other

evidence in the record including Trimble's activities such as poker, pool, playing darts, shooting

guns, living with his family, shopping, driving, performing some household chores, and

maintaining personal grooming – all of which indicate that Trimble is capable of more activity

than he alleged.  [Tr. 21.]   Just because the ALJ concluded that Trimble's limitations did not

render him disabled for purposes of receiving DIB does not mean that the ALJ ignored Trimble's

problems and limitations.  The ALJ directly acknowledged the limitations Trimble has and the

problems from which he suffers – he simply concluded that they were not so severe that Trimble

was disabled according to the standard set by the regulations.

Because ALJ Stanley clearly articulated his reasons for weighting Dr. Welch's opinions

as he did, the procedural safeguards required by the regulations have been met here.  *See, e.g.,*

*Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470 (6th Cir. 2006) (noting that ALJ

complied with procedural safeguards of § 404.1527 because he provided sufficient reasons for

rejecting the opinions of the treating physicians); *Smith v. Comm'r of Soc. Sec.* 482 F.3d 873,

877 (6th Cir. 2007) (affirming ALJ decision not to give treating physician's opinion controlling weight where the opinions were "inconsistent with the overall evidence of record" as this was "a factual determination within his discretion under § 404.1527(d)(2)").  Thus, after reviewing the record, the Court finds that the ALJ weighted Dr. Welch's opinion satisfactorily and offered sufficient justification when his opinion was not relied upon.  Consequently, the ALJ's decision must stand because substantial evidence reasonably supports his conclusion.  *See Her*, 203 F.3d at 389-90; *Casey*, 987 F.2d at 1233.

### B

Trimble also argues that the ALJ "failed to consider the impairments suffered by the Plaintiff" [R. 9-1 at 3], and later contends that the ALJ failed to consider the cumulative effect of his impairments.[7]  [*Id*. at 4.]  The only further explanation given for this assertion is Trimble's statement that the medical evidence in Trimble's medical records makes it "clear" that Trimble "is severely impaired from his mental difficulties."[8]  [*Id*. at 3-4.]  As Trimble correctly points out, the ALJ must consider the combined effect of the claimant's impairments rather than only considering whether each impairment by itself is sufficient to render the claimant disabled. *Walker v. Sec'y of Health & Human Servs*., 980 F.2d 1066, 1071 (6th Cir. 1992).  At Step 2 of the evaluation process, the ALJ must consider the severity of each impairment as well as the "combination of impairments," and whether the combination of impairments is severe enough to render the claimant disabled.  20 C.F.R. § 404.1520 (a)(4)(ii); *see also* 20 C.F.R. § 404.1523

---

[7] The Court presumes that this assertion is related to the contention in Trimble's list of "issues presented" at the beginning of his brief where he argues that the ALJ did not consider whether the cumulative effect of Trimble's impairments was severe enough to render him disabled.  [R. 9-1 at 2.]

[8] Although Trimble cites to the mental impairment questionnaire filled out by Dr. Welch, he provides no further explanation for his argument that the ALJ failed to consider the combined effects of the impairments listed on that form.  As explained above, the ALJ considered Dr. Welch's opinion and took into account many of the limitations listed on the questionnaire. The ALJ also explained why the limitations were not "severe" under the regulations.

(providing that the combined effect of claimant's impairments must be considered "without regard to whether any such impairment, if considered separately, would be of sufficient severity"). In *Walker*, the ALJ erred by analyzing each of the plaintiff's impairments in isolation and never considering whether their combined impact would be severe enough to render the plaintiff disabled. *Walker*, 980 F.2d at 1071.

Here, while Trimble disagrees with the ALJ's ultimate conclusion, he fails to explain in what way the ALJ did not consider the combined effect of his impairments, or what specific impairments the ALJ did not consider at all.[9] Contrary to Trimble's assertions, the ALJ's decision repeatedly refers to Trimble's impairments in the plural form when evaluating their combined effect. For example, the ALJ noted that he analyzed "[t]he severity of the claimant's mental impairments, considered singly and in combination." [Tr. 15.] In explaining his findings concerning severity, the ALJ discussed Trimble's mental impairments in the plural, and discussed the combined effect of those impairments at length. [Tr. 15-16.] When explaining his determination of Trimble's RFC, the ALJ again considered Trimble's "symptoms" in the plural and repeatedly referred to his impairments in the plural form within his analysis. [Tr. 17-21.] The fact that the ALJ specifically noted that he considered the impairments "in combination" and discussed their effects in the plural context is sufficient to satisfy the requirement of considering their combined effect. *See Gooch v. Sec'y of Health & Human Servs*., 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988) (finding that ALJ's reference to plaintiff's impairments in the plural form was clear evidence that he considered the impairments

---

[9] Trimble cites to, without further explanation, the mental health questionnaire filled out by Dr. Welch. [R. 9-1 at 3 (citing Tr. 315).] As explained above, each impairment listed on the questionnaire was discussed by the ALJ, as well as their cumulative effect, and where the ALJ's ultimate findings departed from Dr. Welch's conclusions, those findings were supported by substantial evidence and were adequately explained in the ALJ's decision.

collectively and that it would be unreasonable to require "a more elaborate articulation of the ALJ's thought processes").  When explaining why several of Trimble's impairments are "not severe," the ALJ discussed such impairments separately; however, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination," especially when "the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch*, 833 F.2d at 592).

Moreover, the hypothetical questions that the ALJ posed to the VE at Trimble's hearing concerning whether Trimble could perform any of his past relevant work further supports a finding that the ALJ considered the impairments' cumulative effects.  In particular, the ALJ posed hypotheticals that combined several of Trimble's impairments, and at one point specifically asked the VE to "assume both in combination and separately" that the hypothetical individual suffered from a number of Trimble's limitations. [Tr. 60-64.]  *See, e.g., Reid v. Colvin*, 2013 WL 3270436, at *5 (E.D.Ky. June 25, 2013) (finding that the ALJ adequately considered the cumulative impact of plaintiff's impairments when the ALJ permitted the VE to consider the combined effect of impairments and posed hypothetical questions that incorporated all of plaintiff's limitations); *see also Catron v. Astrue*, 2008 WL 4304502, at *5-6 (E.D.Ky. Sept. 18, 2008) (finding that questions posed to a VE by the ALJ can be evidence that the ALJ adequately considered the combined effect of plaintiff's impairments).  Trimble does not point to any impairments that the ALJ's hypothetical questions failed to account for, nor does he otherwise show how the limitations posed to the VE did not properly consider his impairments.

## C

Finally, Trimble lists two other "Issues Presented" at the beginning of his motion for summary judgment.  These issues, however, are never mentioned again in the brief and are completely undeveloped by any further argument, law, or support.  The Commissioner pointed out her inability to address such undeveloped arguments, and the Court also is unable to review these arguments without any further clarification from Trimble.  When claimants merely refer to issues "in a perfunctory manner, unaccompanied by some effort at developed argumentation," the issue is "deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 466 (6th Cir. 2003) (deeming argument waived when claimant failed to brief the issue) (quoting *U.S. v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)); *see also Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000); *Hicks v. Astrue*, 2010 WL 399099, at *3 (E.D.Ky. Jan. 26, 2010) (deeming claimant's argument waived when claimant "merely provid[ed]. . . conclusory statements that the ALJ's findings [were] incorrect" without further explanation).  Thus, Trimble's perfunctory assertions that are completely undeveloped are deemed waived.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that:

1.      Trimble's Motion for Summary Judgment [**R. 9**] is **DENIED**;

2.      The Commissioner's Motion for Summary Judgment [**R. 10**] is **GRANTED**; and

3.      Judgment in favor of Defendant will be entered contemporaneously herewith.

This 3rd day of February, 2015.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**